UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELLY M. HEBERT                                               CIVIL ACTION

VERSUS                                                        NO. 10-145

MICHAEL J. ASTRUE, COMMISSIONER                               SECTION "C" (2)
OF SOCIAL SECURITY ADMINISTRATION


**FINDINGS AND RECOMMENDATION**

Plaintiff, Kelly M. Hebert, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") and supplemental security income benefits ("SSI") under

Titles II and XVI, respectively, of the Act.  42 U.S.C. §§ 405(g), 423, 1381a.  This matter

was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and

Local Rule 73.2E(B).

Hebert filed applications for DIB and SSI on April 24, 2007, alleging disability

since August 22, 2006, due to back and knee problems.  (Tr. 79-85, 119).  After her

applications were denied, she requested a hearing before an Administrative Law Judge

("ALJ"), which was held on February 13, 2008.  (Tr. 20-28).  On May 7, 2008, the ALJ

issued a decision denying plaintiff's applications.  (Tr. 8-15).  After the Appeals Council

denied review on December 30, 2009, the ALJ's decision became the final decision of

the Commissioner for purposes of this court's review.  (Tr. 1-4).

I.      STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.      The ALJ erred by failing to consider plaintiff's fibromyalgia, anxiety and
        depression as severe impairments and failing to consider the aggregate
        effects of these impairments in his decision.

B.      The ALJ's residual functional capacity assessment is not supported by
        substantial evidence.

C.      The ALJ erred at Step Five of the sequential evaluation by applying the
        Medical-Vocational Guidelines when plaintiff has significant non-
        exertional limitations.

II.     ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.      Hebert has not engaged in substantial gainful activity since August 22,
        2006, the alleged disability onset date.

2.      She has severe impairments consisting of chondromalacia[1] of the right knee
        and mild degenerative changes in the lumbar spine.

3.      Although plaintiff's medically determinable impairments could reasonably
        be expected to produce the alleged symptoms, her assertions concerning the
        intensity, persistence and limiting effects of her symptoms are not credible

---

[1]Chondromalacia is a softening of articular cartilage, most frequently in the patella (knee cap).
Dorland's Illustrated Medical Dictionary 344, 1355 (29th ed. 2000) ("Dorland's").

to the extent they are inconsistent with the residual functional capacity assessment below.

4.      The ALJ agreed with the finding of non-disability at the initial agency level and found that Hebert is not significantly limited by her impairments. The ALJ assigned controlling weight to the opinion of Christopher E. Cenac, Jr., M.D.. because his opinions are supported by the record.

5.      Plaintiff is able to perform her past relevant work as a clerical worker.

6.      Considering her age, education, work experience and a residual functional capacity for the full range of sedentary work, a finding of "not disabled" is directed by Medical-Vocational Rules 201.25 and/or 201.26.

(Tr. 10-14).

III.    ANALYSIS

A.      Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence

in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. <u>Id.</u>

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Perez</u>, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Id.</u>; <u>Newton</u>, 209 F.3d at 452; <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[2] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§

---

[2]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994); <u>Hollis v. Bowen</u>, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2008).  The regulations

include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920;

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[3]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If

she successfully carries this burden, the burden shifts to the Commissioner to show that

other substantial gainful employment is available in the national economy that the

_____

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.      Factual Background

Hebert testified that she has not worked since January 2007,[4] when she was a receptionist, and that she had performed that type of work for quite some time before she stopped working. (Tr. 22-23). She said she stopped working because of pain in her back, for which she was receiving injections that caused her to miss work, and because she was undergoing physical therapy for her knee at the same time. She stated that she did not apply for worker's compensation or unemployment benefits and that she is not looking for work now. (Tr. 23-24).

---

[4]The agency determined that plaintiff stopped working on August 21, 2006 because of knee surgery and that her return to work from November 20, 2006 through January 15, 2007 was not "substantial gainful activity" for purposes of the Act. (Tr. 109, 115). The ALJ also found that Hebert had not engaged in substantial gainful activity after August 22, 2006.

Plaintiff testified that her son lives with her, that he pays the bills and that she receives food stamps.  She said that "horrific" pain in her back prevents her from working because she can neither sit nor stand for very long.  She stated that she has pain in her legs whenever she moves for a little while.

Hebert said she is treated by Dr. Morgan at Leonard J. Chabert Medical Center. She testified that Dr. Morgan told her to stay off her feet, rest, take her medication and refrain from lifting anything.  She said she is afraid to take too much medication because addiction runs in her family.  She stated that she takes prescription medication when she is in tears because of the pain, but that the medication does not help the pain and only puts her to sleep.  (Tr. 24).

Plaintiff clarified that Dr. Morgan told her she could lift five to ten pounds, but she finds that a gallon of milk is too heavy for her to lift.  She said she lives in Houma, Louisiana with her mother, her son, her niece and her niece's baby.  At this point in the hearing, she asked whether she could stand up.  She stated that, on a typical day, she sits on the sofa in a fetal position, which relieves her pain somewhat, or that sometimes she just goes to bed in that position.  She testified that she does not drive, but her niece or her mother drives her.

Hebert said she cannot sleep because of pain.  She stated that she wakes up 10 to 15 times during the night and she takes short naps on and off during the day when she

can. (Tr. 25). She testified that her doctor has prescribed medication for depression, to relax her muscles and to help her sleep. She said the sleeping pill helps her to sleep a little longer, but she does not combine it with the muscle relaxer because both of them help her to sleep. She testified that she sleeps for two to three hours, then wakes up in pain. She stated that her doctor has advised her to lose weight, but it is hard for her to do anything, although she has tried to do what they tell her. She said she only eats once or twice a day.

Plaintiff testified that she feels best when she sits on the sofa in the fetal position, although she still has some pain, but not as bad as the pain she was feeling at that moment during the hearing. She said the pain worsens after she is up for 15 to 20 minutes. (Tr. 26). She stated that she tries to cook, but she cannot stand long enough to cut up an onion and has to sit down 2 to 3 times for 20 to 30 minutes at a time while cutting an onion or helping to wash the dishes. (Tr. 26-27). She said that she sits, rather than lying, in a fetal position on the couch for most of the day. She described the position as being curled up on the couch, as if reading a book. She testified that she cannot carry a load of clothes out to the shed where the washing machine is located. (Tr. 27).

C.      Vocational Expert Testimony

A vocational expert, Cindy Harris, testified at the hearing.  She stated that

plaintiff's past relevant work as a receptionist is sedentary, semi-skilled work.  (Tr. 23).

She testified that a person who has to sit in a fetal position for most of the day could not

engage in meaningful work activity.  (Tr. 27).

D.      Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the

medical evidence.  (Tr. 11-13).  I find the ALJ's summary of the medical evidence

substantially correct and incorporate it herein by reference, with the modifications,

corrections and highlights noted below.

E.      Plaintiff's Appeal

1.      The ALJ did not err by failing to consider plaintiff's fibromyalgia,
        anxiety and depression as severe impairments and failing to consider
        the aggregate effects of these impairments.

The ALJ found that Hebert has severe impairments consisting of chondromalacia

in her right knee and mild degenerative changes in her lumbar spine.  The ALJ observed

that the medical records contained "notations of depression/anxiety and fibromyalgia"

(Tr. 12), but he found "no objective evidence to support" the fibromyalgia diagnosis.

(Tr. 13).  Plaintiff argues that the ALJ erred by failing to find that her depression, anxiety

and fibromyalgia are serious impairments and failing to address the combined effects of

these impairments with her other severe impairments. She also contends that the ALJ

failed to comply with procedural regulations for addressing her mental impairments and

failed to give any reasons for "ignor[ing]" her diagnosis of fibromyalgia.

In the Fifth Circuit, an impairment is considered non-severe if it is "'a slight

abnormality [having] such minimal effect on the individual that it would not be expected

to interfere with the individual's ability to work, irrespective of age, education or work

experience.'" Loza, 219 F.3d at 391 (quoting Stone v. Heckler, 752 F.2d 1099, 1101 (5th

Cir. 1985)) (internal quotation omitted). The ALJ in the instant case cited the relevant

standard and explained why he found that plaintiff's fibromyalgia was not severe. He

did not address at step two why plaintiff's depression and anxiety were not severe

impairments.

When the ALJ has proceeded beyond step two to find the plaintiff is not disabled

at a subsequent step, plaintiff's argument that the ALJ failed at step two to find that a

particular impairment is severe

> is inapposite because the ALJ did not [deny] plaintiff's benefits based on
> a finding that her impairments are not severe. See Chapparo v. Bowen, 815
> F.2d 1008, 1011 (5th Cir. 1987) (argument regarding improper application
> of Stone standard irrelevant to disposition of case if outcome of case [did]
> not turn on issue of severity); see also Shipley v. Director of Health and
> Human Services, 812 F.2d 934, 935 (5th Cir. 1987). The ALJ's report
> contains a statement of the Stone standard and a determination that as it
> applied to this case, [one of claimant's several alleged impairments] is a
> severe impairment. . . . The ALJ then proceeded to the next step of the

sequential evaluation and assessed whether an impairment or a combination of plaintiff's impairments met or exceeded the severity of the impairments listed in the appendix.  See 20 C.F.R. § 404.1594(f)(2).  In the absence of a "non-severe" finding as to any one of plaintiff's impairments and a decision to [deny] plaintiff's benefits based on a "non-severe" finding, plaintiff cannot complain that any prejudice resulted from the ALJ's performance at this stage in the evaluation.  See Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) (decision will not be reversed where claimant makes no showing that she was prejudiced by deficiencies she alleges).

Lawrence v. Barnhart, No. 01-1366, 2002 WL 356316, at *2 (E.D. La. Mar. 4, 2002)

(Vance, J.); see also Bradshaw v. Astrue, No. 1:07-CV-0150-C, 2008 WL 4387087, at *6

(N.D. Tex. Sept. 26, 2008) (citing Robinson v. Barnhart, 183 F. App'x 451, 455 (5th Cir.

2006); Reyes v. Sullivan, 915 F.2d 151, 154 n.1 (5th Cir. 1990); Chapparo, 815 F.2d at

1011) ("In more recent cases, the Fifth Circuit has found no merit to claimants'

arguments of ALJ error arising out of the failure to correctly apply or state the Stone

standard where the sequential evaluation process proceeds past step 2.").

Having found that Hebert had two severe impairments, the ALJ proceeded through subsequent steps of the evaluation, considered all of the evidence concerning her medically determinable impairments and found at the fourth step that she is capable of performing her past relevant work.  The ALJ's failure to find at step two that plaintiff's other impairments were severe is irrelevant and non-prejudicial to plaintiff. Accordingly, this assignment of error is meritless.

11

2.      The ALJ's residual functional capacity assessment is supported by
        substantial evidence.

At step four of the sequential evaluation, the ALJ found that plaintiff has the

residual functional capacity to perform the full range of sedentary work.  In addition to

finding severe impairments of chondromalacia in Hebert's right knee and mild

degenerative changes in her lumbar spine, the ALJ acknowledged that plaintiff's medical

records included "notations of depression/anxiety and fibromyalgia." (Tr. 12).  However,

the ALJ found that the diagnoses of lower extremity radiculopathy and fibromyalgia by

one of plaintiff's treating physicians were not supported by objective evidence; that an

EMG and nerve conduction study was negative for radiculopathy; that x-rays and an MRI

of plaintiff's lumbar spine revealed only mild degenerative changes without stenosis; and

that her knee symptoms resolved following surgery in 2006.  The ALJ stated that his

residual functional capacity took into account the combined effects of plaintiff's obesity

and her other impairments.  (Tr. 13).

        Hebert contends that the ALJ improperly based his residual functional capacity

assessment of her on a physical residual functional capacity form that was completed by

an agency level disability examiner, who is not a physician or other acceptable medical

source.  (Tr. 212-19).  Plaintiff also argues that the ALJ improperly afforded controlling

weight to the opinion of Christopher E. Cenac, Jr., M.D. ("Dr. Cenac Jr."), an orthopedist

12

who examined Hebert once concerning her complaints of back pain upon a referral from orthopedic surgeon Christopher Cenac, <u>Sr</u>., M.D., who had performed plaintiff's successful knee surgery.   (Tr. 208-11).   I find that neither of these contentions is meritorious.

Hebert argues, incorrectly, that the ALJ "afforded the same weight" to the disability examiner's opinion that she is not disabled as he did to medical opinions, and that the ALJ found that Hebert is not disabled <u>based on</u> the disability examiner's opinion. Plaintiff's memorandum, Record Doc. No. 12-1 at p. 6.  To the contrary, the ALJ stated that he "concur[s] with the findings of the state agency regarding claimant's impairments" because his "<u>own independent assessment</u> reaches the same result" and because he found that Hebert was "not significantly limited by her impairments" for reasons that he explained.  (Tr. 13) (emphasis added).

Hebert next contends that Dr. Cenac Jr.'s opinion does not support the ALJ's residual functional capacity assessment because Dr. Cenac Jr. opined only about plaintiff's back problems and rendered no opinion about her functional abilities in light of her combined impairments, including anxiety, depression, fibromyalgia and chondromalacia.  Hebert asserts that the ALJ should have accepted her own testimony about her pain and functional abilities instead of Dr. Cenac Jr.'s opinion.

On February 26, 2007, Dr. Cenac Jr. examined plaintiff and reviewed the results of lumbar and pelvic x-rays and an MRI of her lumbar spine taken on January 2, 2007. The x-rays were normal except for a slight collapse at the L5-S1 vertebra.  The MRI showed a slight disc dessication at the same level with a mild central bulge, but no stenosis.  On physical examination, Hebert's back had a normal range of motion without any tenderness or spasm.  She exhibited normal reflexes, motor strength and sensation in all her extremities.  Her gait was normal and she had no clonus,[5] Babinski's reflex[6] or root tension signs.  Dr. Cenac Jr. diagnosed her with degenerative joint disease at L5-S1 and opined that "at present I do not feel she will need any further treatment" other than anti-inflammatory medication "and a mild pain prescription."  He told Hebert that she had "mild degeneration in her back" and advised her to lose weight to improve her back problems.  He stated that, "[s]hould she request further treatment[,] I will recommend lumbar spine physical therapy."  (Tr. 210).

---

[5]Clonus is "alternate contractrion and relaxation in rapid succession" or "a continuous rhythmic reflex tremor initiated by the spinal cord below an area of spinal cord injury, set in motion by reflex testing."  Dorland's at 365.

[6]Babinski's reflex (also called Babinski's sign or phenomenon) is "dorsiflexion of the big toe on stimulating the sole of the foot; normal in infants but in others a sign of a lesion in the central nervous system."  Dorland's at 1546.

The ALJ afforded controlling weight to Dr. Cenac Jr.'s findings, which he found substantially supported by the medical record, including the objective test results cited by Dr. Cenac Jr. and subsequent tests.   On August 28, 2007, Hebert had an electromyogram ("EMG") and nerve conduction study, which revealed "[n]o EMG evidence of right lumbosacral radiculopathy.  Nerve conduction study of bilateral lower extremities showed absent sural[7] sensory responses bilaterally.  This can be from a lower extremity neuropathy or from technical problems do [sic] to her lower extremity edema." (Tr. 271).  X-rays of both of plaintiff's hips on February 1, 2008 were negative.

Despite Dr. Cenac Jr.'s recommendation for physical therapy in February 2007 and a referral order for physical therapy from another doctor dated March 3, 2008 (Tr. 295-96), plaintiff did not seek physical therapy for her back until January 22, 2009, nine months after the ALJ denied her application for benefits.  (Tr. 282-91).  Hebert also testified that she preferred not to take the prescription medications that were prescribed for her.  (Tr. 24, 26).  It is well established that a plaintiff's failure to seek or follow prescribed treatment is a relevant factor to consider in determining the severity of an impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Doss v. Barnhart, 137 F.

---

[7]"Sural" means "pertaining to the calf or leg."  Dorland's at 1735.

App'x 689, 690 (5th Cir. 2005); <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992);

<u>Griego v. Sullivan</u>, 940 F.2d 942, 945 (5th Cir. 1991); <u>Villa v. Sullivan</u>, 895 F.2d 1019,

1024 (5th Cir. 1990).

Pain may constitute a non-exertional impairment that can limit the jobs a claimant

would otherwise be able to perform. <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir.

1990); <u>Carter v. Heckler</u>, 712 F.2d 137, 141-42 (5th Cir. 1983). "Pain constitutes a

disabling condition when it is 'constant, unremitting, and wholly unresponsive to

therapeutic treatment.'" <u>Falco v. Shalala</u>, 27 F.3d 160, 163 (5th Cir. 1994) (quoting

<u>Selders v. Sullivan</u>, 914 F.2d 614, 618-19 (5th Cir. 1990)); <u>accord</u> <u>Chambliss v.</u>

<u>Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001). Subjective complaints of pain must be

corroborated by objective medical evidence. <u>Quijas v. Astrue</u>, 298 F. App'x 391, 393

(5th Cir. 2008); <u>Chambliss</u>, 269 F.3d at 522.

It is within the ALJ's discretion to determine the disabling nature of a claimant's

pain, and the ALJ's determination is entitled to considerable deference. <u>Jenkins v.</u>

<u>Astrue</u>, 250 F. App'x 645, 647 (5th Cir. 2007) (citing <u>Chambliss</u>, 269 F.3d at 522); <u>Wren</u>

<u>v. Sullivan</u>, 925 F.2d 123, 128 (5th Cir. 1991); <u>James v. Bowen</u>, 793 F.2d 702 (5th Cir.

1986). Whether an applicant is able to work despite some pain is within the province of

the administrative agency, and the agency's determination should be upheld if supported

by substantial evidence.  Jenkins, 250 F. App'x at 647; Chambliss, 269 F.3d at 522;

Jones v. Heckler, 702 F.2d 616 (5th Cir. 1983).

Importantly, the ALJ has the responsibility to evaluate the credibility of witnesses,

Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions

are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"

Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164).

Thus, the ALJ's evaluation is entitled to considerable deference by this court.  McKnight

v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957,

962 (5th Cir. 2007); Falco, 27 F.3d at 164 & n.18.  The ALJ's explanation of his reasons

for finding plaintiff not entirely credible is all that is required.  Id. at 163-64; Godbolt v.

Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord

James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000)

(citing Falco, 27 F.3d at 164).

In this case, the ALJ explained at length why plaintiff's subjective symptoms and

alleged limitations were not credible and were inconsistent with the clinical and objective

findings.  See Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5,

2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th

Cir. 1991)) (Substantial evidence supported the ALJ's credibility determination, given

his findings that plaintiff exaggerated his symptoms and failed to follow his prescribed

treatment regimen.); <u>Austin v. Apfel</u>, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing <u>Griego</u>, 940 F.2d at 945) ("The ALJ did not err in failing to credit Austin's subjective complaints of pain as those complaints were contradicted by medical reports and by Austin's decision to forego pain medications, corrective surgery, and ongoing treatment.").

This court is not the finder of fact in the first instance in this case. Whether this court might have weighed the evidence differently is of no moment. The ALJ appropriately resolved any conflicts in the evidence. Substantial evidence in the record supports the ALJ's decision to afford controlling weight to the opinion of Dr. Cenac Jr. and not to credit plaintiff's own subjective complaints, which are not substantially supported by the objective medical evidence. That is all that is required.

Accordingly, plaintiff's assignment of error concerning the ALJ's residual functional capacity assessment lacks merit.

> 3. The ALJ did not err by applying the Medical-Vocational Guidelines at Step Five.

Hebert argues that the ALJ erred by applying the Medical-Vocational Guidelines at step <u>five</u> of the sequential evaluation. She contends that, because she suffers from non-exertional limitations (pain and depression) in addition to her physical impairments, the ALJ could not use the Medical-Vocational Guidelines at the fifth step and was

required to obtain vocational expert testimony at that point to establish that jobs are available in the economy that she is capable of performing.

However, the ALJ determined at step <u>four</u> of the evaluation that Hebert was not disabled when he found that she has the residual functional capacity to perform her past relevant work as a clerical worker.  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is not disabled.  <u>Perez</u>, 415 F.3d at 461.  Although the ALJ mentioned the Medical-Vocational Guidelines (which are used at the fifth step) in his findings, he was not required to proceed to that step, having already found at the fourth step that plaintiff is not disabled.

Therefore, the burden did not shift to the Commissioner at the fifth step to establish the availability of jobs that Hebert can perform.  Accordingly, this assignment of error is moot.

CONCLUSION

The ALJ did not err by failing to consider plaintiff's anxiety, depression and fibromyalgia as severe impairments and failing to consider the aggregate effects of these impairments in his decision. The ALJ's residual functional capacity assessment is supported by substantial evidence.  He was not required to obtain vocational expert testimony at the fifth step of the sequential evaluation because he found at the fourth step that Hebert is not disabled.

19

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[8]

New Orleans, Louisiana, this ___9th___ day of November, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.